BORDER CITY SAVINGS AND LOAN
ASSOCIATION, Plaintiff-Appellant,

v.

FIRST AMERICAN TITLE INSURANCE
COMPANY OF MID–AMERICA,
Defendant-Appellee.

No. 84–1351.

United States Court of Appeals,
Sixth Circuit.

Argued March 5, 1985.

Decided April 18, 1985.

Publication Ordered July 10, 1985.

---

Jeffrey D. Pepper, Robert Currie (argued), Dearborn, Mich., for plaintiff-appellant.

Stephen A. Bromberg (argued), Bromberg, Robinson, Shapero, Cohn, & Burgoyne, Southfield, Mich., for defendant-appellee.

Before CONTIE and WELLFORD, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PER CURIAM.

Plaintiff Border City Savings and Loan Association (BCS & L) appeals from District Judge Horace Gilmore's order dismissing the complaint against defendant First American Title Insurance Company of America (First American).

This action, based on diversity, was removed by defendant First American, a Missouri corporation, from Michigan state circuit court in Wayne County, Michigan. During the period pertaining to this suit, First American conducted business in Wayne County as a foreign corporation under its previous name of Burton Title and Abstract Company.

In this suit BCS & L seeks 1) a declaratory judgment establishing its sole ownership of a mortgage title insurance policy issued by First American with a face amount up to $600,000 and/or 2) a liability judgment as an owner or third party beneficiary for $600,000 against First American on the policy due to the allegedly invalid and unenforceable status of a mortgage in connection with a BCS & L loan. The parties agree that Michigan law applies to the claim.

A major obstacle to BCS & L's claim is that it has never dealt directly with First American. The policy in question does not identify BCS & L as a party in interest. The policy instead explicitly names as an insured party only Toledo Mortgage Corporation, which later changed its name to Kennecorp Equities, Inc. (Kennecorp Equities).

The trial court found no grounds on which BCS & L can lay claim to the policy benefits or proceeds. The court emphasized that the policy had even been cancelled by First American and was thus no longer in effect when plaintiff brought suit. Upon a combined motion to dismiss and/or grant summary judgment, BCS & L's action was dismissed with prejudice.

The question on appeal is whether the court's dismissal erroneously failed to recognize the existence of a legally cognizable claim and material issue of controverted

fact. *See* Federal Rules of Civil Procedure 12(b)(6) and 56(b). BCS & L claims ownership and/or third party beneficiary status in the First American policy stemming from a separate contractual agreement with Kennecorp Equities on August 19, 1976. This was an agreement establishing, according to its terms, that BCS & L had purchased for $600,000 a "fifty percent (50%) participating interest" from Kennecorp Equities in "loans secured by liens pursuant to the applicable provisions of the laws of the State of Ohio and all applicable laws of the State of Michigan."

BCS & L alleges that the purpose of the money contributed was its 50% participation interest in a $1.2 million loan negotiated by Kennecorp Equities four days later (August 23, 1976) to Royal Manor Associates, a Michigan limited partnership specializing in health care ventures.[1] The Royal Manor partnership planned to use the loan to help finance its purchase of a nursing home in Highland Park, Michigan. In order to secure the loan, Royal Manor negotiated a first mortgage on the nursing home property to named mortgagee Kennecorp Equities. First American then issued the mortgage title insurance policy guaranteeing the Royal Manor partnership's good title and the first mortgage status on the property. As already stated, this policy explicitly identified only Kennecorp Equities as possessing "ownership" of the policy and did not mention the name or explicitly recognize the participation of plaintiff BCS & L in any fashion.

The ownership argument of BCS & L must first contend against conflicting language in the participation loan agreement with Kennecorp Equities. The terms of this previous agreement would appear to exclude BCS & L from claiming any ownership interest in a subsequent mortgaged loan to a third party. It states, for example, in paragraph 11 that:

> Seller [of the loan participation interest, i.e., Kennecorp Equities] is authorized

subject to this Agreement to *retain* the Participation Loan *in Seller's own name* and *may deal with the same as though an absolute owner....* Any person, firm or corporation may deal with Seller concerning said Participation Loan in the same manner *as if the Seller were the sole owner and no participating interest were outstanding.*

(Emphasis added). In paragraph 5, this agreement also states:

> Seller [Kennecorp Equities] shall be in the status of and act as an independent contractor and shall in no event be considered an agent or employee of Purchaser [Savings and Loan], *it being the intent of the parties hereto that this Agreement shall not constitute nor be construed to create a partnership or joint venture between Seller and Purchaser.*

(Emphasis added).

These passages also militate against BCS & L's argument for third party beneficiary status. The parties to a contract must *intentionally* confer beneficiary status on a third party. *Bowen v. Nelson Credit Centers, Inc.,* 137 Mich.App. 76, 357 N.W.2d 811, 814 (1984), *citing* M.C.L. § 600.1405, M.S.A. § 27A.1405. An *incidental* beneficiary has no legally recognized contractual claim against either party. *Id.* The contractual terms between BCS & L and Kennecorp Equities clearly allow a mortgaged loan borrower and other parties to treat the latter as the sole owner. First American would have no apparent reason to know or inquire about the existence of BCS & L's participation interest. First American also introduced uncontroverted affidavit testimony from its president Carl A. Hasselwander that the policy intended to "insure only the named insured thereunder [Kennecorp Equities], and [First American] had no knowledge whatever of Plaintiff [BCS & L] and/or it's [sic] alleged relationship to the mortgage loan...."

---

1. BCS & L originally sued Kennecorp Equities as well as First American in state court. By agreement of the parties, however, Kennecorp Equities was dismissed from the suit and complete diversity resulted.

BCS & L alleges that First American "possessed actual knowledge" of its interest as of the cancellation of the policy in 1982. Yet BCS & L never actually claims that First American had actual knowledge of its interest as of the issuance.[2] BCS & L instead argues simply that First American must be understood as then intending to cover plaintiff's interest because the policy stated that its insurance covers "the owner of the indebtedness secured by the insured mortgage." This phrase, however, is not a sufficient identification to establish BCS & L's then unspecified and undeclared ownership interest in the loan to Royal Manor.

BCS & L argues in the alternative that its ownership interest must be recognized because it actually is the *sole* owner of indebtedness under the policy. It argues that Kennecorp Equities never contributed any money and thus has no proper claim to ownership status by its breach of the participation agreement, and its alleged fraud. BCS & L emphasizes the fact that Kennecorp Equities apparently loaned to Royal Manor only $600,000, the amount of BCS & L's own anticipated 50% contribution rather than the originally contemplated $1,200,-000. This occurred despite the fact that representatives of Royal Manor executed a promissory note and mortgage to Kennecorp Equities of $1.2 million. BCS & L argues that First American's policy covering Royal Manor's mortgage to Kennecorp Equities had a liability maximum of only $600,000 due to the stated reason that this

figure reflected "the amount actually disbursed."[3]

BCS & L essentially claims that Kennecorp Equities and the negotiating representatives for Royal Manor partnership were engaged in a fraudulent ruse at its expense. Kennecorp Equities first manipulated $600,000 from BCS & L into the hands of Royal Manor representatives, and Royal Manor then promised to pay back $1.2 million for receiving this lesser $600,-000 sum. BCS & L suggests that it had no reason to suspect fraudulent activities immediately after receiving documents concerning the Royal Manor-Kennecorp transaction. The promissory note and mortgage from Royal Manor seemed to confirm that the expected loan transfer of the full $1.2 million had taken place. BCS & L also alleges that its copy of the First American policy omitted a "Note" identifying the actual amount disbursed and thus the maximum liability under the policy as $600,000. BCS & L did not, however, include this copy as a part of the Joint Appendix.

BCS & L thus alleges that it did not discover the fraudulent loan ruse until three years after these activities at the closing when the title policy was issued. BCS & L, however, never charges that First American was involved, knew, or should have known of this alleged manipulation. Moreover, even when the evidence is viewed in the most favorable light to BCS & L, we have difficulty in accepting the assertion that it took three years to learn of the fraud.

**2.** BCS & L's third party beneficiary argument might survive a dismissal or summary judgment if based on a claim of actual knowledge on Title Insurance's part as of the policy's issuance. Regardless of the participation agreement's terms, BCS & L could argue that First American was *estopped* from denying ownership interest due to this knowledge. There is no evidence whatever of any such knowledge, circumstances from which knowledge on the part of First American could even be reasonably inferred, nor the intention of the parties that BCS & L be a third party beneficiary.

**3.** At the bottom of the first page of the Title Insurance policy, a passage reads:

NOTE: Notwithstanding that the mortgage insured hereunder is in the amount of $1,200,-000 the liability of the insurer hereunder is limited to $600,000 *the amount actually disbursed.*

(Emphasis added). However, the passage in the policy does not in any way establish that the $600,000 loaned to Royal Manor by Kennecorp Equities actually represented the participation money transferred by BCS & L. It also does not prove that BCS & L's participation money was earmarked by the lending parties for the Royal Manor loan. Moreover, First American, unlike the other parties involved in the loan and mortgage, is not accused of complicity or wrongdoing in connection with the alleged defrauding of BCS & L.

A necessary precondition for *any suit* on First American's mortgage title policy is proof of the invalid and unenforceable status of the title guaranteed therein.[4] The status of the title mortgage guaranty was raised in 1979 after Kennecorp Equities started foreclosure proceedings against Royal Manor for default on the loan. Royal Manor asserted as a primary defense that its apparent legal representative possessed a *forged* "power of attorney" document allowing him to execute "promissory notes, mortgages, assignments, and documents incidental to said transaction."

Royal Manor, however, has lost on that foreclosure defense and the mortgage has been judicially held *enforceable.* Judge Gilmore was also the judge who made this amended Judgment of Foreclosure on February 4, 1984. BCS & L essentially acknowledges Judge Gilmore's related holding about the enforceability of the first mortgage guaranteed by First American but attempts to ignore the damaging legal consequences.[5]

Furthermore, as part of the legal activity stemming from this foreclosure action, First American repurchased its policy from Kennecorp Equities and cancelled it in January 1982 *before* the institution of plaintiff's action in March 1982. "The surrender or cancellation of a policy terminates an insurer's liability for subsequent losses...." 14 Callaghan's Michigan Civil Jurisprudence, Insurance, Sec. 281 at 315. The district court thus specifically doubted whether BCS & L could bring such a belated claim on the policy subsequent to its cancellation.

Unfortunately, BCS & L may well have suffered an outrageous breach of contract in this case. The apparent breach, however, involves a participation agreement

with a defendant voluntarily dismissed out of this suit, Kennecorp Equities. BCS & L cannot prevail. The conditions triggering liability under the policy were not demonstrably breached, and the policy has apparently lost any legal force due to cancellation.

We AFFIRM the judgment for defendant accordingly.

---

4. As BCS & L seems to acknowledge throughout its brief, First American's mortgage title insurance policy does not in any way protect such lenders as BCS & L against bad loan arrangements *per se;* it simply guarantees the validity of title on the mortgaged property. Any liability therefore must stem from a defective *title.*

5. BCS & L actually attempted to intervene as a party of interest in the foreclosure action.

Judge Gilmore denied the motion as not timely filed. This court is not privy to the facts surrounding the foreclosure action and Judge Gilmore's ruling on BCS & L's attempted intervention. But if BCS & L perceived error in his ruling, BCS & L should then have appealed rather than asking this court now to reopen the issue of the mortgage's validity.